UNITED STATES v. WOTTON et al.

(Circuit Court of Appeals,. First Circuit. December 6, 1892.)

No. 30.

1. CUSTOMS DUTIES—CLASSIFICATION—"PLUCKED" CONEY SKINS.

"Plucked" coney skins—that is, such as have had the hair removed from them—are not dutiable as "dressed furs or skins," within Tariff Act 1890, par. 444, but are entitled to entry free, under paragraph 588, as "fur skins not dressed in any manner." 50 Fed. Rep. 693, affirmed.

2. SAME—DETERMINATION OF CLASSIFICATION.

The actual character and condition of the skins when imported, and not the use to which they are subsequently to be put, determine their classification. U. S. v. Schoverling, 13 Sup. Ct. Rep. 24, followed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

At Law. "Plucked coney skins" were imported by James A. Wotton and William C. Wotton, as Wotton Bros., and were entered at the port of Boston, and appraised by the collector as subject to a duty of 20 per centum ad valorem, as hatters' furs, or dressed fur skins. Wotton Bros. appealed to the board of United States general appraisers, which reversed the action of the collector, and held the importation entitled to free entry under tariff act of October 1, 1890, (paragraph 588,) as a "fur skin, not dressed in any manner." The collector, under the customs administration act, appealed to the circuit court, which affirmed the decision of the board. 50 Fed. Rep. 693. The United States, on application of the attorney general, appeals. Affirmed.

Frank D. Allen, U. S. Atty., and Henry A. Wyman, Asst. U. S. Atty.

Richard Olney and Gerrard Irvine Whitehead, for appellees.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

WEBB, District Judge. This case presents the question of the proper classification under the tariff law of October 1, 1890, of an importation of goods called by the importers "hatters' furs." They were plucked coney skins. All that had been done to them after being taken off the animal was to open them, cut off the legs, ears, and other useless parts, clean and stretch them, and pluck the long hair from them. They were then properly denominated "plucked coney skins," and were in condition to be dressed for use in making various garments, or to have the fur cut off and manufactured into hats.

The evidence is that, although coney skins are principally consumed in the manufacture of hats, they are also employed, like other fur skins, for trimming, and various garments; the extent of this latter use varying with fashion. At the time of this importation more coney skins than usual were appropriated to articles of dress. Before they could be so manufactured, the skin or pelt must be treated in a way to be converted into leather, and be made soft and flexible. This process is by every witness recognized as "dressing," and is in-

differently called "dressing the skin" or "dressing the fur." For the manufacture of hats this treatment of the pelt is not necessary, and would be a waste of labor and expense. It is then to be ascertained and determined what, under the tariff act, these goods in fact were. This is not concluded by the name given to them by the importer, unless it is found that they were in commerce so generally known by it as to make that name their proper commercial designation. They were not dressed coney skins, nor dressed coney fur skins. They would not be regarded as dressed furs by any furrier or dresser of furs. They were not "furs prepared for hatters' use," but material from which such furs could be prepared, just as they were raw materials which could be converted into dressed skins, or dressed coney fur skins, or dressed coney furs, or dressed coney,—as one might choose to speak of them,—fitted to be made into garments. Plucking out the long hair was, it is true, one step in preparing the fur for the hatter, but it was also a not uncommon step in preparing them to be made up into various articles of dress.

The evidence adduced is voluminous, and somewhat conflicting. These goods are quite generally said by fur dressers to be raw or undressed coney skins. Witnesses whose business has been for years plucking fur skins disclaim the trade of fur dressing. Men of the largest experience testify that, if an order were given them to "dress the fur upon a lot of skins," they would not understand what was meant. Plucking may be and is done both before and after the skins are dressed, and dressed skins are plucked or unplucked, according to the variety of skin and the demand of fashion. Many witnesses, when compelled to explain what is meant by "dressed fur on the skin," though confessing that the expression is unfamiliar to them, say that they should think it would apply to these goods. In so testifying they seem rather to be striving to find a meaning for the terms than to be explaining words well known and thoroughly understood by them. Hatters and manufacturers of hatters' furs testify that the terms "dressing" and "dressed furs" are not employed in speaking of hatters' furs. The testimony to prove that the cost of the skins is increased by plucking affords no assistance in solving the questions presented in this case. It needed no witness to satisfy the court that labor of any kind upon them involves expense. But whether they are dutiable or not is not by congress made conditional on their cost.

The act of October 1, 1890, (26 St. p. 567,) contains three paragraphs, under some one of which these goods must be classified, namely: (444) "Furs, dressed on the skin, but not made up into articles, and furs not on the skin, prepared for hatters' use, twenty per centum ad valorem;" (587)—in the free list,—"furs undressed;" (588)—also in the free list,—"fur skins of all kinds not dressed in any manner." These are all the provisions of the act about which there can be any question. The similitude section is inapplicable; that relates only to nonenumerated articles. These furs are enumerated, if held to come under any of the paragraphs quoted. And that they do come under some one of them is not controverted. The difference is in regard to which of the paragraphs of the statute is ap-

plicable to these goods. The statute speaks of furs and fur skins generally. It specifies no particular fur, with the single exception of "furs not on the skin, prepared for hatters' use," and even there no mention is made of the animal bearing the fur. Nor, with the same exception, does it refer to the use for which the furs are intended. Paragraph 444 manifestly intends furs so dressed that they are in condition to be made up into what are popularly known as "fur goods," like caps, capes, mantles, muffs, etc. That such dressing means curing and leathering the pelt is plain, and these are "furs dressed on the skin." Can there be any doubt that they are dressed fur skins? In the opinion of the court, this language of paragraph 444 shows the meaning of "undressed," and "not dressed in any manner," as used in paragraphs 587 and 588. They are all to be construed as indicating the leathering of the pelt.

And these coney skins, which may be adapted to the class of fur manufactures above referred to, or may have the fur upon them taken from the pelt, and fully "prepared for hatters' use," are to be classified for duties, according to their actual character and condition when imported into the country. In determining that classification, the use to which they will be ultimately put is not to be considered. If it were, goods in all respects precisely alike would at one time be subject to a duty of 20 per centum ad valorem, and at another be entitled to free entry. U. S. v. Schoverling, (Nov. 7, 1892,) 13 Sup. Ct. Rep. 24. But, as said by Mr. Justice Story in Bacon v. Bancroft, 1 Story, 341, the terms of tariff laws are to be construed in accordance with commercial usage and understanding. Recognizing this rule of interpretation, and keeping in view the evidence that these skins can be dressed and "made up into articles," the court still holds, upon all the evidence, that, according to general commercial usage and understanding, they are to be classified as "fur skins not dressed in any manner." If any doubt on this point were entertained, the course of departmental rulings in regard to similar goods, under successive tariff acts, and the fact that in this act of October 1, 1890, congress retained the exact terms that had been so ruled upon, would lead the court to the same result.

Judgment of the circuit court affirmed.